# ORIGINAL

1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name     CHAMBERS, CEDRIC

3 |      (Last)               (First)                    (Initial)

**FILED**

Prisoner Number     T - 44984

4 | Institutional Address     CSP - Pelican Bay, P.O. Box 7500, Crescent City, CA 955~

AUG 7 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5 |

95532

6 | =================================================================

7 | **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

8 | CEDRIC CHAMBERS

(Enter the full name of plaintiff in this action.)

**CV**

9 |                          vs.

**08     3775**

Case No.

10 | ROBERT HOREL, Warden

(To be provided by the clerk of court)

11 | _____

**PETITION FOR A WRIT**
**OF HABEAS CORPUS** **MHP**

12 | _____

13 | _____

**E-filing**

14 | (Enter the full name of respondent(s) or jailor in this action)

**(PR)**

15 |

16 | ================================================================

Read Comments Carefully Before Filling In

17 | When and Where to File

18 |     You should file in the Northern District if you were convicted and sentenced in one of these

19 | counties:  Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 | San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.  You should also file in

21 | this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 | good time credits, and you are confined in one of these counties.  Habeas L.R. 2254-3(a).

23 |     If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 | one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 | District Court for the district in which the state court that convicted and sentenced you is located.  If

26 | you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 | your petition will likely be transferred to the district court for the district that includes the institution

28 | where you are confined.  Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1  Who to Name as Respondent

2   You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6   If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now and the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

11   1. What sentence are you challenging in this petition?

12       (a)      Name and location of court that imposed sentence (for example; Alameda

13              County Superior Court, Oakland):

14              Santa Clara County Superior Court          San Jose, California

15              Court                                     Location

16       (b)    Case number, if known   CC 199370

17       (c)    Date and terms of sentence   2/26/2002; 28 Years and 4 Months

18       (d)    Are you now in custody serving this term? (Custody means being in jail, on

19              parole or probation, etc.)                 Yes ✓     No _____

20              Where?

21              Name of Institution:   CSP - Pelican Bay

22              Address:   P.O. Box 7500, Crescent City, California 95532

23   2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  Robbery; Attempted Robbery; Making a Criminal Threat (Robbery for benefit of Gang)

27  211-212.5 A PC; 422 Penal Code; 186.22 (b)(1)

28

PET. FOR WRIT OF HAB. CORPUS          - 2 -

1    3. Did you have any of the following?

2        Arraignment:                          Yes ✓    No ____

3        Preliminary Hearing:                  Yes ✓    No ____

4        Motion to Suppress:                   Yes ✓    No ____

5    4. How did you plead?

6        Guilty _____  Not Guilty ✓  Nolo Contendere _____

7        Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9        Jury ✓    Judge alone _____  Judge alone on a transcript _____

10    6. Did you testify at your trial?                Yes ____    No ✓

11    7. Did you have an attorney at the following proceedings:

12        (a)    Arraignment                    Yes ✓    No ____

13        (b)    Preliminary hearing            Yes ✓    No ____

14        (c)    Time of plea                   Yes ✓    No ____

15        (d)    Trial                          Yes ✓    No ____

16        (e)    Sentencing                     Yes ✓    No ____

17        (f)    Appeal                         Yes ✓    No ____

18        (g)    Other post-conviction proceeding    Yes ____    No ✓

19    8. Did you appeal your conviction?              Yes ✓    No ____

20        (a)    If you did, to what court(s) did you appeal?

21            Court of Appeal                   Yes ✓    No ____

22            Year: 2003        Result: Affirmed _____

23            Supreme Court of California       Yes ____    No ____

24            Year: 2003        Result: Denied _____

25            Any other court                   Yes ____    No ____

26            Year: _____     Result: Denied _____

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

1                       petition?                                     Yes \_\_\_\_   No\_\_\_\_

2           (c)    Was there an opinion?           Yes \_\_\_\_   No\_\_\_\_

3           (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                               Yes \_\_\_\_   No ✓

5                       If you did, give the name of the court and the result:

6

7                           _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?          Yes ✓   No\_\_\_\_

10         [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16       (a)    If you sought relief in any proceeding other than an appeal, answer the following

17                 questions for each proceeding. Attach extra paper if you need more space.

18               I.     Name of Court: Superior Court of CA - Santa Clara

19                     Type of Proceeding: Habeas

20                     Grounds raised (Be brief but specific):

21                       a. Ineffective Appellate Counsel

22                       b. Newly Discovered Evidence

23                       c._____

24                       d._____

25                     Result: Denied            Date of Result: 5/30/2006

26               II.    Name of Court: Court of Appeals, Sixth District of CA

27                     Type of Proceeding: Habeas

28                     Grounds raised (Be brief but specific):

a. Ineffective Assistance of Appellate Counsel

b. Newly Discovered Evidence

c.

d.

Result: Denied _____ Date of Result: 1/12/07

III. Name of Court: Court of Appeals, Sixth Appellate Distrcit

Type of Proceeding: Habeas

Grounds raised (Be brief but specific):

a. IAC Appellate Counsel

b. Newly Discovered Evidence

c. Evidentiary Hearing Appeal Court Error

d.

Result: Denied _____ Date of Result: 11/2007

IV. Name of Court: Superior Court Santa Clara County

Type of Proceeding: Habeas

Grounds raised (Be brief but specific):

a. Trial Court error by imposing the Upper Term

b.

c.

d.

Result: Denied _____ Date of Result: 8/27/07

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No ✓

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully. Give facts to

support each claim. For example, what legal right or privilege were you denied? What happened?

Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5 -

1   need more space. Answer the same questions for each claim.

2   [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim One: PETITIONER ASSERTS THAT THERE IS INSUFFICIENT EVIDENCE TO SUPPT

6   A CONVICTION FOR ROBBERY

7   Supporting Facts: In violation of a fair trial and due process. SEE ATTACHED PAGE

8

9

10

11   Claim Two: PETITIONER ASSERTS THE INSTRUCTION GIVEN TO THE JURY REGARDIN

12   PC 186.22 ENHANCEMENT FAILED TO DEFINE (see attached Page)

13   Supporting Facts: In violation of Due Process and a fair trial. SEE ATTACHED PAGE

14

15

16

17   Claim Three: PETITIONER ASSERTS THAT THERE WAS INSUFFICIENT EVIDENCE OF

18   THE PRIMARY ACTIVITIES OF THE SEVEN TREES GANG

19   Supporting Facts: In violation of Due Process and a fair trial.

20

21

22

23   If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   ALL GROUNDS EXHAUSTED.

26

27

28

PET. FOR WRIT OF HAB. CORPUS    - 6 -

## Claim One:
## PETITIONER ASSERTS THAT THERE IS INSUFFICIENT EVIDENCE TO SUPPORT A CONVICTION FOR ROBBERY.

**All this in violation of his right to due process and fair trial.** Petitioner was convicted of robbing Brandi. Because the offense was treated as a second strike and because the gang enhancement of the offense was found to be true, appellant was sentenced to a total term of 22 years for taking $50 from Brandi. As set forth below, the conviction for robbery of Brandi must be reversed because the evidence was insufficient to the conviction.

The United States Constitution requires that sufficient evidence support a defendant's conviction. The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence. The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. Under our system of criminal justice even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar.

When Brandi had an argument with her mother two days after the alleged robbery, Petitioner was the one she turned to for help. She said that she knew he would help her and that he did just as she expected. When he found her a motel room, she spent a couple of hours with him consuming drugs. These facts show that Brandi was on friendly terms with appellant until two days after the alleged robbery.

The evidence that was offered by the prosecutor to establish that Brandi was afraid of appellant on the night of the alleged robbery actually established that she became afraid of him after her mother reported him to the police rather than at the time of the alleged robbery. Brandi said that she was afraid of appellant because he told her that he is in the Seven Trees gang. But this was a result of the threats she received after he was reported to the police. She knew he was in a gang on the night of the incident but sat with him in his car. She knew he was in a gang two days later but called appellant for help and used drugs with him in the motel room. These facts show that Brandi only became afraid of appellant after Mary reported him to the police well after the alleged robbery.

Brandi also testified that while she had never seen appellant with a gun he had told her that he has one. Brandi said that appellant had been violent with her twice in the six months that she knew him. However, she voluntarily associated with him after those incidents including sitting in his car with him at the moment her mother arrived home on the night of the alleged robbery, indicating she did not fear appellant that night. None of Brandi's conduct indicated any fear of appellant. Rather, her conduct demonstrated that she was quite friendly with appellant, looked to him for assistance when she fought with her mother, and did not believe that her mother had been hurt in any way by appellant. A defendant has a constitutional right to be convicted of the offense he actually committed. Whatever offense appellant may have committed on the night of December 28, 2000, he did not commit robbery in a dwelling. Brandi's was not afraid of Petitioner December 28, 2000.

Claim Two:

## PETITIONER ASSERTS THE INSTRUCTION GIVEN TO THE JURY REGARDING PENAL CODE SECTION 186.22 ENHANCEMENT FAILED TO DEFINE THE "PRIMARY ACTIVITY" ELEMENT OF THE ENHANCEMENT.

**All this in violation of his right to due process and fair trial.** Petitioner was convicted of robbery (Pen. Code § 211) and attempted robbery (Pen. Code §§ 664/211). The jury also found that each offense was committed for the benefit of a gang within the meaning of Penal Code section 186.22, subd. (b)(1). *(Ibid.)* As a result, appellant was sentenced to an additional 10 years for the robbery and an additional 10 years, stayed, for the attempted robbery. The instruction given to the jury defining the section 186.22 enhancement is set forth at pp. 421-426 of the Clerk's Transcript. "Criminal Street Gang" . The instruction said in part that:

*Any ongoing organization, association or group of three or more persons, whether formal or informal; (2.)        Having as one of its primary activities the commission of any one or more of the felonies specified below; (3).Which has a common name or common identifying sign or symbol; (4) 4.       And whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity.*

"Primary activities" means the commission of one or more of the following criminal acts: [The instruction then lists 23 specified offenses.]

In this Court clarified that the "primary activities" element of the enhancement is not satisfied by showing that the gang committed "one or more" of the listed offenses. Rather, "[S]ufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute

Petitioner alleges commission of the listed offense(s) be a "chief" or "principal" activity of the gang as opposed to an isolated occurrence. It did not require the jury to find that the offenses were consistently and repeatedly committed.

Claim Three:

## PETITIONER ASSERTS THAT THERE IS INSUFFICIENT EVIDENCE OF THE PRIMARY ACTIVITIES OF THE SEVEN TREES GANG.

This error by the trial court resultein Petitioner not havinf a fair trial and receiving due process of law. Having assumed that CALJIC No. 17.24.2 was required to be given in this case, the Court of Appeal found that the failure to give the instruction was harmless beyond a reasonable doubt, based on the general description of gang activity given by Detective Cusseaux, the prosecutor's gang expert. Petitioner respectfully submits that the Court of Appeal's conclusion manifests a misunderstanding of the requirements of the California controlling case on the matter *People v. Sengpadychith, supra, 26* Cal.4th at *p. 324.)*

The evidence offered by the prosecutor to establish the "primary activities" element of gang enhancement was provided by Detective Lamont Cusseaux who was qualified as a gang expert. Detective Cusseaux testified about the Seven Trees Crips, appellant's alleged gang. With respect to the primary activities, Cusseaux testified as follows:

> Prosecutor:    Are you quite familiar with the Penal Code section 186.22, subd. (e) which details which details crimes involved (sic) by gang members?

> Cusseaux: Yes.

> Pros.:  Of that list of twenty-five criminal crimes would you say that any of those are the primary activity of Seven Trees Crips?

> Cusseaux:    I'd say several of those are the primary activity.

> Pros.:   What criminal acts that are enumerated would you consider to be primary activities of Seven Trees?

> Cusseaux:    Narcotic sales, theft of vehicles, drive-by shootings, prostitution, pimping rather, things like that. Different things like that. There's probably a couple more.

> Pros.:    Are you aware of, is witness intimidation also a primary activity of Seven Trees?

> Cusseaux:    Yes, that's very common. Very common.

*Sengpadychith* requires that the jury determine that the gang actually committed one or more of the listed offenses consistently and repeatedly as an element of the enhancement. The activities can be established by expert testimony if the expert establishes the basis for his opinion Cusseaux's testimony is inadequate because it consists of general assurances that crimes are committed that are without any factual basis, such as indications when the crimes were committed or by whom.

The testimony offered by Detective Cusseaux provides no basis upon which he could evaluate the factual basis of his opinion. Cusseaux provided background evidence that established that he was familiar with (1) the general history of the Crips in the San Jose area; and (2) the specific facts of the two predicate offenses and appellant's connection to them. However, he provided no factual basis whatsoever that the jury could use to evaluate the basis of his opinion about the Seven Trees' primary activities. Rather, Detective Cusseaux simply provided undifferentiated assurances, unsupported by any facts, that Seven Trees had committed numerous violations of various listed offenses. Cusseaux provided no factual basis for his specific opinions about the primary activities of the Seven Trees Crips. Thus, neither the jury nor this Court can evaluate the reliability of Cusseaux's opinion about the primary activities of the Seven Trees Crips. In the absence of any factual basis for the opinions, they are reduced to speculation, hearsay and rumors.

Thus, the second question posed by the handling of the gang enhancement in this case is whether an expert's assurances, unsupported by a factual basis, constitutes sufficient evidence upon which to find that the primary activities element of the section 186.22 enhancement has been established.

**Claim Four**

**PETITIONER PRESENTS NEW EVIDENCE TO WIT STATE WITNESS BRANDI BROWN'S SWORN DECLARATION IN WHICH SHE ADMITTED SIGNING IN PRISON ON JANUARY 6, 2003, STATES THAT SHE GAVE FALSE TESTIMONY AT TRIAL REGARDING THE ROBBERY SHE HAD ACCUSED PETITIONER OF COMMITTING.** (Previously presented in state courts and exhausted)

This admission of perjury and the failure of the state courts to accepts same **violates Petitioner's right to a fair trial and due process of law.**

COPY OF DECLARATION AND PARTIAL SUPPORTING FACTS ARE PRESENTED HEREIN FOR THE COURTS CONSIDERATION, Petitioner asserts that the state court committed error and that a full evidentiary hearing should be granted or his petition should be granted in full.

## The Recanting Declaration

Brown's sworn declaration, (hearing exhibit A), which she admitted signing in prison on January 6, 2003, states that she gave false testimony at trial regarding the robbery she had accused petitioner of committing. Her declaration states that she gave the $50.00 (which was owed from a prior drug sale to her mother) to petitioner willingly and not out of fear.

She declares that her trial testimony of petitioner demanding money and assaulting her mother in the bedroom was false, since she could neither see not hear what was going on in that room from where she was sitting.

She declares that her testimony was false regarding petitioner's claim of gang affiliation: she never heard it.

She declares that the reason she lied at trial was because she was angry with petitioner for not returning her clothes. She declares that she colluded with her mother to get back at petitioner by calling 911 with a false report of petitioner making threats of coming to the trailer with a gun.

The declaration states that she signed of her own free will and without pressure or intimidation. The declaration is completely opposite and contradicts her trial testimony in each particular.

## Brown's Evidentiary Hearing Testimony

Brown testified at the hearing that she signed and dated her declaration, but she did not read it before signing. She was given a copy a couple of days later by the same inmate who asked her to sign it. $(RT^2\ 6.)$ Brown testified that the person who presented the declaration for her to sign was someone named Jackie that she knew from San Jose. They had smoked methamphetamine together in San Jose, and had been in Elmwood together. Brown described Jackie as heavyset, pregnant, about 5' 5" in height, 170 pounds, around 27 years old and housed in Unit B-1, the same unit as

1  Brown. (RT 7-9, 12.)

2       When Jackie approached Brown with the declaration, Brown was with another
3  inmate. Jackie was alone and did not have a weapon. Jackie allegedly told Brown to
4  sign or risk getting beaten up. Brown did not have a pen, so Jackie went to go get one
5  while Brown and her friend waited. (Brown would not identify her "friend"). Brown
6  stated that she did not even ask to look at or read the document before she signed it.
7  (RT 10-11.)

8       Brown then testified that a couple of days after signing her declaration she
9  reported to a prison official that she was being threatened by other unnamed inmates
10  and had herself put into protective custody. The officer she reported to was not
11  Sergeant (now Lieutenant) Neeley, but another officer assigned to her unit. She did not
12  tell this officer that the threats had anything to do with her signing the declaration. She
13  did not tell this officer that it was Jackie, another inmate in the same unit, that had
14  threatened her. When asked by the officer who the threats were coming from, she said
15  she did not know. She testified at the hearing that she did not tell the officer about
16  Jackie because *Jackie never threatened her.* (RT 16.) She stated that when Jackie
17  asked her to sign the declaration she did not take that as a threat. (RT 17.) Further,
18  she only first mentioned the declaration when she reported to Neeley several weeks
19  later. When Neeley allegedly asked who was it who was making threats, she again
20  refused to mention Jackie. (RT 14-19.)

21       Brown then testified that she received a letter from appellate attorney Eric
22  Weaver (hearing exhibit B) more than a month after she signed the declaration. The
23  letter inquired as to the veracity of the declaration and the facts regarding her trial
24  testimony which the declaration recanted. Brown never answered Weaver's letter. (RT
25  19-21.)

26       When asked at the hearing about the statements in her declaration regarding the
27  robbery charge, Brown testified that she did not give petitioner the $50.00 out of fear
28  for her safety, but to get him to leave her mother alone (which he already had found to

1 leave her house. (RT 21.) She admitted that it was almost two weeks later that she
2 and her mother called the police to report the incident at the trailer. She admitted that
3 she was mad at petitioner about some clothes in the motel that petitioner did not return
4 to her, but stated that she never reported a robbery, only that petitioner had hit her
5 mother. When asked why she waited two weeks to call the police, she stated that she
6 planned with her mother to get back at petitioner for beating her mom. She testified that
7 she possibly could have reported a robbery, . . . "just because he took so much from
8 me. I guess the anger had built up from him beating my mom . . . That was just like he
9 is doing too much. . . " (RT 22-24.)

10 Brown then testified that a day or two after the incident at the trailer, she had an
11 argument with her mother and needed a place to stay. She called petitioner, someone
12 she presumably was in fear of, and went to stay with him at a motel. (RT 25.) It was
13 after the stay at the motel that petitioner did not return her clothes to her. About a week
14 or so later she and her mother devised the plan to call the police.

15 Brown testified that she did not know that lying under oath was perjury and could
16 get her in trouble with the law. (RT 26.) When asked on cross examination if she had
17 brought the letter from Weaver to her meeting with Neeley, she denied it, stating that
18 she had thrown it away. (RT 29.) Then, when shown a copy of the same letter that
19 Neeley had faxed to the district attorney, she admitted that she had brought it with her
20 to show Neeley. (RT 34.) She then denied that the letter caused her concern, but
21 that she reported to Neeley, some five or six weeks after signing her declaration,
22 because she was threatened. Although she admitted that she brought both her
23 declaration and the Weaver letter to show Neeley, she denied that was the reason for
24 her visit to his office, She claims her reason to speak to Neeley was that she was
25 threatened. (RT 35.) (Neeley denied Brown ever said she was threatened. See a
26 summary of Neeley's testimony, below.)

27 Brown suffered a conviction for felony car theft and was in prison on a parole
28 violation at the time she signed her declaration. (Return 9, 13.)

Declaration

1. I Brandy Brown declare that on or about December of 2001, I bore false testimony of robbery against Cedric Chambers in a court of law.

2. I again testified to witnessing Cedric Chambers walk into my mother, (Mary Martinez), bedroom on December 16, 2000, and punch her several times as he demanded money from her. This also was false testimony. I could not actually see what was taking place in the bedroom from where I was sitting. Nor could I clearly hear details of the argument between Mary and Cedric.

3. I declare that the testimony I gave in regard to giving the associate of Cedric Chambers fifty dollars in cash out of fear for our safety was false. I gave the money on my own free will.

4. I declare that I bore false testimony, saying I specifically heard Cedric Chambers or his associate make the statement, "This is Seven Trees", as the two were leaving Mary's trailer home on December 16, 2000. I never heard Chambers or his associate make reference to, "Seven Trees", on December 16,2000.

5. I declare that after being unsuccessful over the phone in getting Chambers to return my clothing, I resorted to a plot. I returned to Mary's trailer on December 27, 2000, where we both discussed to plot a scheme to get back at Chambers for not returning my clothes. We plotted and had Mary call 9-1-1 to report a fabricated false terrorist threat to be made by Chambers. I had no legitimate reason to believe Chambers was on his way to Mary's house with a gun on December 28, 2000 at 1:08 a.m. This is true since neither of us talked to Chambers during the time I was at the trailer.

6. I admit to having animosity towards Chambers for giving my clothes away. This is the reason for me giving false testimony against Chambers.

7. I declare that I am making these confessions on my own free will. By no means am I being pressured or intimidated to make the above statement.

I Brandy Brown declare under penalty of perjury that the foregoing is true and correct.

Executed on: 7-6-03
(Date)

Signature: Brandi Brown

Claim Five

# PETITONER CHAMBERS WAS ASSERTS THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF HIS SIXTH ADMENDMENT RIGHT TO COUNSEL.

Petitioner Chambers says that he felt that his Appeals counsel Eric Weaver Bar # 115208 was ineffective because he failed to present on direct appeal evidence know to him while he was preparing the appeal that state witness Brandi Brown had presented false testimony. Had this evidence, though absent, the affidavit of Brown that came in 2006, petitioner feels that the appeals court may have allowed a more thorough evidentiary hearing and reversed his conviction at the most or reduced his sentence in the least.

Petitioner has come to understand the responsibilities of the counsel as stated in Strickland and other cases that further clarify Strickland. The right to effective assistance of trial counsel is guaranteed by the United States Constitution and by corresponding articles of the California constitution. (*United States Const. Amends. 6th and 14; People Ledevia 43 Cal. 3d. 171 (1987); Powell v. Alabama, 288 U.S. 45, 68 (1932).*

Effective assistance is that which means and objective standard of reasonableness under prevailing professional norms. *Strickland v. Washington 466 U.S. 668, 688 (1984).* A criminal defendant has a right to not only counsel appeal but to competent counsel on appeal. The Supreme Court has set forth some specific duties which appointed counsel must fulfill to meet his or her obligations as a competent advocate. These include the duty to prepare a legal brief containing citations to the appellant record and appropriate authority, and setting forth all arguable issues (*People V Harris [1993] 19. cal App. 4th*

709) It is appropriate to raise an issue of ineffective assistance (*In re Smith [1970] 3 cal 3d 192, 202, 203*). The defendant need not show he was entitled to a reversal, but only that inexcusable failure of counsel to raise a crucial assignment of error occurred, which arguably might have resulted in reversal (*5 Nitkin and Epstein Cal Criminal Law [2nd Ed. 1989]*).

Trial Counsel's first duty is to thoroughly research and raise all arguable issues (*People V Harris [1993] 19 cal App 4th 709) (Mason V Hanks 97 F 3d 887, 894 [7th Cir 1996]*) (ineffective assistance of counsel when counsel failed to raise obvious issues without legitimate strategic purpose). Where a constitutional claim is so novel that it's legal basis is not reasonably available to counsel a defendant has cause for his failure to raise the claim in accordance with state procedures (*Estelle V Smith 451 US 454 101 s. ct, 1866, 681 ed. 2d 359 [198]*). In appropriate cases the principles stated in the above and finality that inform the concepts of cause and prejudice must yield to eh imperative of correcting a fundamentally unjust incarceration (*Murray V Carrier 477 US, 495 106 s. ct) (Engle V Issac 456 US at 136*).

Where issues of competence arise, which cannot be resolved adequately on an appellate records, the issue **may be raised by way of habeas corpus**. ( *People v. Bean (1988) 46 Cal. 3d 919, 944; People v. Pope (1979) 23 Cal. 3d 412, 426.)*

1       List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4  See Attached pages please behind this page.

5

6

7  Do you have an attorney for this petition?                Yes_____  No ✓

8  If you do, give the name and address of your attorney:

9  In Pro Per

10       WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on ____08-03-08____         _Cedric Charlan_

14        Date                 Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS    - 7 -

PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, Crescent City :

I am an inmate at California State Prison at Pelican Bay,  the within **Petitioner**

**for Writ of Habeas Corpus** for my Writ of Habeas Corpus was served on the below

listed parties by placing a true copy in a sealed envelope with postage thereon fully

prepaid and gave it to a correctional officer to be placed in the United States mail at

Crescent City, California, addressed as follows:

**United States District Court for the Northern District of California**
450 Golden Gate
Box 36060
San Francisco, CA  94102

**California Attorney General**
333 West Santa Clara Street
San Jose, CA  95113

I declare that under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

Executed on _____ 2008 at Crescent City, California.

Cedric Chambers T - 44984
Attorney Per Se
CSP - Pelican Bay
P.O. Box 7500
Crescent City, CA  95532

UNITED STATES POSTAGE

02 1M
0004217666
MAILED FROM ZIP CODE 95531

$ 02.19⁰
AUG 04 2008

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

AME: Isaac Chambers

DC NO: T44984 HOUSING: B4-118

PELICAN BAY STATE PRISON
P.O. BOX 7500
CRESCENT CITY, CA 95532

RECEIVED

AUG 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
for the Northern District of California

450 Golden Gate

Box 36060

San Francisco, CA 94102

LEGAL MAIL



3775